**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARLOS H. VELEZ-ROLDAN,

      Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

CIVIL NO.: 11-1451 (MEL)

**OPINION AND ORDER**

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Carlos Iván Vélez-Roldán[1] ("plaintiff" or "claimant") was born in April of 1956. (Tr. 26, 124.) He completed high school and was employed as an electronic parts tester at a company until the factory closed in September of 2004. (Tr. 25-26, 31-33, 41, 151.)

On February 2, 2006, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability beginning on September 8, 2004, due to depression, anxiety, and a cervical condition. (Tr. 16, 21, 124, 127, 150.) Plaintiff's application was denied initially as well as on reconsideration. (Tr. 16, 52-54, 55-58.) After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on July 30, 2008. (Tr. 28.) Plaintiff attended the hearing, represented by an attorney, and testified regarding his alleged disability. (Tr. 30.) On October 29, 2008, the ALJ rendered a decision denying plaintiff's claim. (Tr. 10.) The Appeals Council denied plaintiff's request for review on April

---

[1] In the complaint, plaintiff is identified with the middle initial "H," but other documents, including the denial of review by the Appeals Council, identify his middle name as "Iván."

15, 2011; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant").  (Tr. 1.)

On May 16, 2011, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), alleging that it was not based on substantial evidence.  (Docket No. 1.)  On July 18, 2011, defendant filed an answer to the complaint and a certified transcript of the administrative record.  (Docket Nos. 9; 10.)  Both parties have filed supporting memoranda. (Docket Nos. 11; 16.)

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

Once the Commissioner has rendered his final determination on an application for disability benefits, a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence.  Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error."  López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner [ ] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).  Moreover, a determination of substantiality must be made based on the record as a whole.  See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence."  Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B.   DISABILITY UNDER THE SOCIAL SECURITY ACT

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146-47 (1987).  An individual is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S. C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according a five-step sequential process.  20 C.F.R. § 404.1520; <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003); <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 804 (1999); <u>Yuckert</u>, 482 U.S. at 140-42.  If it is determined that the claimant is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.  At step one, it is determined whether the claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  If so, then disability benefits are denied.  20 C.F.R. § 404.1520(b).  Step two requires the ALJ to determine whether the claimant has "a severe medically determinable physical or mental impairment" or severe combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If he does, then the ALJ determines at step three whether the claimant's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, then the claimant is conclusively found to be disabled.  20 C.F.R. § 404.1520(d).  If not, then the ALJ goes on to step four and assesses whether the claimant's impairment or impairments prevent her from doing the type of work he or she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five.  At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[2] combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied.  20 C.F.R. § 404.1520(g).

---

[2] An individual's residual functional capacity is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments.  20 C.F.R. § 404.1545(a)(1).

4

Under steps one through four, the plaintiff has the burden of proving that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

## III.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD

The certified medical record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions:

### A.   Physical Impairments

Plaintiff frequented Atlantic Medical Center ("AMC") between August 11, 2004, and September 7, 2005, initially concerning nerve, back, and neck problems. (Tr. 72-80.) He stated in October that he felt better, but in May mentioned that he began experiencing anxiety, palpitations, and numbness. (Tr. 74-75, 77.) In 2006 and 2007, plaintiff received treatment for high blood pressure and back and neck pain from Dr. Lourdes Montano-Rivera. (Tr. 88-92.) Plaintiff also saw Dr. José Urdaz, an orthopedic surgeon, in 2006 and 2008. (Tr. 255-56, 294-97.) In his diagnostic report from November 2006, Dr. Urdaz notes that plaintiff had a "considerable back hump" and diagnoses him with scoliosis, kyphosis, and a third condition that was illegible. (Tr. 255-56.)

### B.   Other Impairments

Plaintiff received treatment at APS Healthcare between September 22, 2004, and December 28, 2005, for anxiety, insomnia, irritability, low self-esteem, loss of appetite, and occasional crying spells. (Tr. 81-85.) The progress note from the first visit indicates that

plaintiff had symptoms of depression.  (Tr. 85.)  In June 2005, he experienced partial loss of memory, but was oriented, coherent, and relevant.  (Tr. 84.)

The record also contains a psychiatric evaluation of plaintiff conducted by Dr. Hazel A. Toledo-Espiet on April 5, 2006, at the request of the Social Security Administration.  (Tr. 229-31.)  Dr. Toledo-Espiet notes that plaintiff was unable to concentrate, had memory problems, was anxious and depressive, claimed to hear voices, had feelings of worthlessness and helplessness, and displayed aggressive behavior and hostility.  (Tr. 229.)  In his evaluation, Dr. Toledo-Espiet assigns plaintiff a global assessment of functioning ("GAF") score of 40, but notes that his prognosis of plaintiff's mental condition was "guarded."  (Tr. 231.)[3]

Between 2006 and 2008, plaintiff received psychiatric treatment from Dr. José Vázquez-Sotomayor.  (Tr. 86-87, 93-96, 252-54, 298-307.)  In his evaluation from October 2006, Dr. Vázquez-Sotomayor concludes that stressful situations would cause psychotic–depressive crises for plaintiff and that plaintiff's concentration, abstraction, judgment, and insight were poor.  (Tr. 87.)  Dr. Vázquez-Sotomayor notes in his July 2008 evaluation that plaintiff's psychiatric symptoms were accelerating.  (Tr. 303.)

The record furthermore contains an evaluation from Dr. Jeanette Maldonaldo, a state agency psychologist, who concludes that plaintiff had a depressive syndrome and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 274, 281.)  Dr. Maldonaldo, however, characterizes Dr. Vázquez-Sotomayor's observations and conclusions with respect to plaintiff's mental status as "very incongruent."  (Tr. 287.)  Dr. Maldonaldo notes that

---

[3] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ["DSM–IV—TR"], quoted in Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).  It "considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  DSM–IV–TR at 34 (brackets omitted), quoted in Echandy-Caraballo v. Astrue, 2008 WL 910059 at *4 n.7 (D.R.I. Mar. 31, 2008).  A GAF between 31 and 40 is "characterized by some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  Halverson v. Astrue, 600 F.3d 922, 927 n.5 (8th Cir. 2010) (citing DSM–IV–TR at 34).

Dr. Vázquez-Sotomayor described plaintiff as having both adequate memory and poor concentration, having both full orientation and hallucinations, and unable to cooperate with Dr. Toledo-Espiet but otherwise able to provide information.  (Tr. 287.)

## IV.   LEGAL ANALYSIS

The ALJ's decision reflects an application of the final step of the five-step evaluation process set forth in the Social Security Agency's regulations.  See 20 C.F.R. § 404.1520(g).  In this step, the ALJ determines whether plaintiff's impairments prevents him from making an adjustment to other work, considering plaintiff's RFC, age, education, and work experience.  Id.

Here, the ALJ concludes that plaintiff's non-exertional limitations had "little or no effect on the occupational base of unskilled work at all exertional levels" and thus plaintiff was "not disabled" pursuant to section 204.00 of the Medical-Vocational Guidelines ("the Grid"), found at 20 C.F.R. part 404, subpart P, app. 2.  (Tr. 26.)  Plaintiff objects to the ALJ's decision on the ground that the ALJ failed to use a vocational expert and a medical expert.

### A.   The ALJ's Failure to Use a Vocational Expert

In determining that there were jobs in the national economy that plaintiff could perform in light of his RFC, age, education, and past work experience, the ALJ uses the Grid.  Plaintiff argues that a vocational expert is required to conclude specifically that certain occupations are available to persons of his limitations.  (Docket No. 11, p. 14.)  In response, defendant argues that the ALJ is not precluded from relying solely on the Grid, because plaintiff's nonexertional limitation "amounts to an RFC for unskilled work at all exertional levels."  (Docket No. 16, pp. 10-11.)

The purpose of the Grid is to assist the Commissioner in determining "the existence of other jobs in the national economy that the claimant can perform … in a streamlined fashion

without resorting to the live testimony of vocational experts." Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). Based on "data reflecting major functional and vocational patterns," the Grid directs a finding of "disabled" or "not disabled" based on the combination of the claimant's physical RFC (light work, medium work, heavy work, or very heavy work) and vocational factors (age, education, and work experience). 20 C.F.R. § 404.1569; 20 C.F.R. part 404, subpart P, app. 2 § 200.00(a). The Grid takes into account only "limitations in meeting the strength requirements of jobs" ("exertional limitations"). Id.

When a claimant also exhibits a non-exertional impairment, and the Grid does not direct a finding of disability, the Grid should be used "as a framework" to determine the extent "the individual's work capability is further diminished" by the non-exertional impairment. 20 C.F.R. part 404, subpart P, app. 2 § 200.00(e)(2). Whether the ALJ may use the Grid exclusively depends on this determination. Ortiz, 890 F.2d at 524; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194 (1st Cir. 1987). If the non-exertional impairment only "reduc[es] th[e] occupational base marginally," the Grid may still "be relied on exclusively." Ortiz, 890 F.2d at 524. On the other hand, when "a non-exertional impairment significantly affects claimant's ability to perform the full range of jobs' he is otherwise exertionally capable of performing," the Commissioner must carry his burden "typically through the use of a vocational expert." Id.

Here, in determining plaintiff's RFC, the ALJ finds that plaintiff had "no exertional limitations and restrictions"; the ALJ concludes that plaintiff can physically "comply with the requirements of work-related tasks." (Tr. 20.) Plaintiff's schizoaffective disorder, however, constituted a severe mental impairment which imposed non-exertional limitations on his RFC; as a result, plaintiff was unable to "follow detailed or technically complex job instructions." (Tr. 18.) Referencing the specific requirements for unskilled work in Social Security Ruling 85–15,

the ALJ nonetheless concludes that the limitations "had little or no effect on the occupational base of unskilled work at all exertional levels."  (Tr. 26.); Social Security Ruling ("SSR") 85–15, 1985 WL 56857 (S.S.A.1985), at *4.  According to this reasoning, there was no need to consult a vocational expert, because the non-exertional limitation merely placed plaintiff at a different occupational skill level.

The First Circuit specifically accepted this "shorthand approach" in Ortiz,[4] as long as "the factual predicate (that claimant's [non-exertional limitation] does not interfere more than marginally with the performance of the full range of unskilled work) is amply supportable."  890 F.2d at 526.  Such an inquiry involves two determinations: whether, in light of his mental limitations "(1) a claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved."  Id. Although it noted that Ortiz was "an unusual instance where reliance on the Grid is permissible despite the existence of a significant nonexertional limitation," the First Circuit "[o]n balance" found the ALJ's "exclusive reliance" on the Grid to be "supportable."  Id. at 527-28.

With respect to the first step, there is substantial evidence within the record to show that plaintiff had the skills to perform unskilled work at all exertional levels.  "The basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Id. at 526 (quoting SSR 85–15 at *4).  This determination "requires careful consideration of the assessment of RFC."  SSR 85–15 at *4.

---

[4] The facts in Ortiz are analogous to those in this case.  Both claimants share four relevant characteristics: (1) they were previously able to do skilled or semiskilled work; (2) disregarding their non-exertional limitations, they retained the ability to perform skilled or semiskilled work; (3) their non-exertional limitations prohibited them from performing skilled or semiskilled work; and (4) they retained the ability to perform unskilled work at all exertional levels.  Ortiz, 890 F.2d at 522-23, 525-26; (Tr. 177.).

The ALJ primarily considered the medical evidence from the treating, consulting, and state agency psychiatrists.  In determining that plaintiff retained the ability to perform unskilled work, the ALJ ultimately gave the strongest weight to the evidence from the state agency psychiatrists, including two Mental RFC Assessment forms.  (Tr. 25, 250, 287.)  Dr. Ramón Nevares of the state agency concludes that "claimant can hear, understand, remember, process, analyze and carry out simple instructions and directions to full completion, without impairments or difficulties," "can perform simple tasks," and "can interact appropriately with coworkers and supervisors alike."  (Tr. 250.)  Dr. Jeanette Maldonado came to similar conclusions.  (Tr. 287.)  On the other hand, Dr. Toledo-Espiet, the consulting psychiatrist, diagnoses plaintiff with a mood disorder, while Dr. Vázquez-Sotomayor, the treating psychiatrist, notes that plaintiff's concentration was poor and had a poor ability to follow orders or interact with supervisors.  (Tr. 231, 303, 305.)

In a social security disability case, an ALJ should generally give more weight to a treating physician's opinions, because such doctors "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s)."  20 C.F.R. § 404.1527(d)(2).  An ALJ, however, may disregard them with a showing of good cause: "(1) that they are brief and conclusory, (2) not supported by medically acceptable clinical laboratory diagnostic techniques, or (3) are otherwise unsupported by the record."  Carrasco v. Comm'r of Soc. Sec., 528 F.Supp.2d 17, 25 (D.P.R. 2007).

Here, the ALJ had good cause to reduce the weight given to Dr. Vázquez-Sotomayor's opinions.  As the ALJ indicated, Dr. Vázquez-Sotomayor's evaluations contain no progress notes, little explanatory language, and no citations to diagnostic laboratory or objective evidence; rather, Dr. Vázquez-Sotomayor's evaluations are generally brief and conclusory in nature.  (Tr.

24.)  Similarly, Dr. Toledo-Espiet, who gave a "guarded" prognosis of plaintiff, saw plaintiff only once and gave only a brief evaluation.  (Tr. 229-31.)  Neither psychiatrist provides evaluations that constitute a detailed, longitudinal picture that would be uniquely informative in a social security disability case.  Furthermore, the ALJ is permitted—and expected—to make determinations of credibility and resolve conflicts within the evidence.  See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  In the ALJ's view, the claimant's testimony at the hearing was "logical, coherent, relevant, and fully oriented," which was inconsistent with the findings of Dr. Vázquez-Sotomayor.  (Tr. 22.)  Dr. Maldonaldo's RFC evaluation supports the ALJ's conclusions, noting that Dr. Vázquez-Sotomayor "presented a very incongruent" mental status with respect to plaintiff; furthermore, Dr. Maldonaldo concludes that, from the overall medical evidence, plaintiff should be "able to understand, remember and perform simple tasks," "concentrate for more than two hours period," and "tolerate routine supervision."  (Tr. 287.)  The ALJ points additionally to inconsistencies in Dr. Vázquez-Sotomayor's analysis; for example, he concludes that "stressful situations … would cause psychotic–depressive crises" and has a "very poor" prognosis, but never recommends any kind of sheltered or highly supported living environment.  (Tr. 24, 87.)  Thus, there was substantial evidence to support the ALJ's conclusion that plaintiff had the skills to perform unskilled work, as detailed in SSR 85–15.

The second Ortiz step relates to whether plaintiff has the ability to "accommodate the demands of a work setting per se," independent of skill level.  Ortiz, 890 F.2d at 527.  In some cases, "'the mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.'"  Id. (quoting SSR 85–15 at *6).  As indicated with respect to the first Ortiz step,

the ALJ is entitled to give reduced weight in this case to the treating physician.  The state agency doctors conclude that plaintiff "can complete a normal workday and workweek, without undue interruptions," and "can tolerate routine supervision."  (Tr. 250, 287.)  This, combined with other evidence such as plaintiff's behavior at the hearing, constitutes substantial evidence to support the ALJ's conclusion that plaintiff could conform to the demands of the workplace.

Because plaintiff's non-exertional limitations had little impact on his ability to perform unskilled work at all exertional levels, the ALJ was not required to call a vocational expert and could instead rely exclusively on the Grid to determine whether there were jobs in significant numbers in the national economy that plaintiff could have performed.  Thus, it is unnecessary to address the ALJ's reference to four specific representative occupations.  (Tr. 27.)

### B.        The ALJ's Failure to Use a Medical Expert

Plaintiff argues that the ALJ's failure to consult a medical expert equated to a lack of substantial evidence in favor of his decision.  It is true that an ALJ is not qualified to determine a claimant's RFC based on the "bare medical record."  Berrios Lopez v. Sec'y of Health & Human Services, 951 F.2d 427, 430 (1st Cir. 1991).  Nevertheless, it is clear in this case that the ALJ did not rely merely on the bare medical record, but rather relied on the evaluations of medical experts such as Dr. Maldonaldo.  The ALJ described in the decision how he considered the record as a whole and weighed particular pieces of evidence differently.  For the ALJ's conclusion that plaintiff's limitations do not prevent him from performing unskilled work at all exertional levels, there was substantial medical evidence in support, including two RFCs from state agency doctors.  (Tr. 248-51, 285-88.)  Thus, there was no need for the ALJ to consult an additional medical expert.

**V.**    **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of September, 2012.

s/Marcos E. López
U.S. Magistrate Judge